UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLY SUE S.,[1] | |
| Petitioner, | Case No. 1:20-CV-00332-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Respondent. | |

## INTRODUCTION

Pending before the Court for consideration is Kelly Sue S.'s Petition for Review of the Respondent's denial of social security benefits, filed on June 30, 2020. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons that follow, the Court will remand the decision of the Commissioner for further proceedings.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

## BACKGROUND

On September 13, 2017, Petitioner protectively filed a Title II application for a period of disability and disability insurance benefits, claiming disability beginning August 1, 2016. The application was denied initially and on reconsideration, and a hearing was conducted on June 28, 2019, before Administrative Law Judge (ALJ) Stephen Marchioro. After considering testimony from Petitioner and a vocational expert, ALJ Marchioro issued a decision on July 15, 2019, finding Petitioner had not been under a disability since the alleged onset date through the date of the written decision.

Petitioner timely requested review by the Appeals Council, which denied her request for review on April 28, 2020. Petitioner timely appealed this final decision to the Court on June 30, 2020.

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of Petitioner's alleged onset date of August 1, 2016, she was forty-nine years of age. Petitioner completed high school and post-graduate coursework to obtain a legal assistant certificate. (AR 40.) Petitioner has previous work experience as a legal secretary and a call center operator. (AR 23, 41.)

**MEMORANDUM DECISION AND ORDER - 2**

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 3**

**DISCUSSION**

The following issues are raised on appeal:

1.    Whether Petitioner's degenerative disc disease met or equaled the criteria of Listing 1.04A?

2.    Whether the ALJ's RFC assessment, which omitted Petitioner's use of a walker, is supported by substantial evidence?

3.    Whether the ALJ properly evaluated Petitioner's subjective symptom testimony?

**ANALYSIS**

**1.    The ALJ's Findings**

At step two,[3] the ALJ found Petitioner had the following severe impairments: "degenerative disc disease; and obesity." (AR 18.) At step three, the ALJ determines whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 416.920(d), 416.925 and 416.926.

The ALJ determined Petitioner did not have an impairment or combination of impairments which met or were medically equal to Listing 1.04 (Disorders of the Spine).

---

[3] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v)."

**MEMORANDUM DECISION AND ORDER - 4**

The ALJ explained that he considered Petitioner's back impairment, but determined that the medical evidence in the record did not establish significant nerve root compression, motor loss or weakness, an inability to ambulate effectively, or an inability to perform fine or gross movements effectively as described in the listing. (AR 19.)

At step four, the ALJ determined Petitioner retained the RFC to perform sedentary work, with postural limitations as follows: "operate foot controls bilaterally only occasionally; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; [and] only occasionally be exposed to vibration, to the use of unguarded mechanical parts, and unprotected heights." (AR 19.) In reliance upon testimony from the vocational expert, the ALJ found that Petitioner would be able to perform her past relevant work as a legal secretary and customer service representative. (AR 23.) Further, the ALJ proceeded to step five, and concluded that Petitioner would be able to perform the requirements of representative occupations such as receptionist, data examination clerk, and data sorter. (AR 24.)

Petitioner objects to the ALJ's step three and step four conclusions. She argues the ALJ failed to consider the evidence in the record establishing Petitioner's degenerative disc disease met the requirements of Listing 1.04, and challenges the ALJ's RFC determination because he did not properly evaluate Petitioner's subjective symptom testimony and her use of a walker to ambulate.

**MEMORANDUM DECISION AND ORDER - 5**

2.      **Listing 1.04 – Disorders of the Spine**

At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal those in the Listings. *See* §§ 404.1520(d), 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled. At that point, the Commissioner "acknowledges [the impairment or combination of impairments] are so severe as to preclude substantial gainful activity… [and] the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

The claimant has the initial burden of proving that an impairment meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original).[4]

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ needs not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d

---

[4] Petitioner does not argue medical equivalence.

MEMORANDUM DECISION AND ORDER - 6

1197, 1201 (9th Cir. 1990). The ALJ does not err by discussing the evidence supporting his conclusion only in other sections of his decision. *See id*. at 1200-01 (finding no error when ALJ failed to state or discuss evidence supporting conclusion that claimant's impairments did not satisfy Listing but "made a five page, single-spaced summary of the record"); *Lewis*, 236 F.3d at 513 (ALJ required "to discuss and evaluate the evidence that supports his or her conclusion," but no error when ALJ does not "do so under the heading 'Findings'").

An ALJ's decision that a claimant does not meet a listing must be upheld if it is supported by "substantial evidence." *See Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). When evidence is susceptible of more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Id*.

To meet Listing 1.04A, a claimant must establish a spine disorder resulting in compromise of a nerve root or the spinal cord, with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, app. 1 §

**MEMORANDUM DECISION AND ORDER - 7**

1.04A.[5] Spine disorders that may satisfy Listing 1.04A include "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and] vertebral fracture." *Id*. If all criteria are satisfied, the claimant is "presumed to be disabled." *Bowen*, 482 U.S. at 141. If all criteria are not satisfied, the ALJ is required to continue to step four of the evaluation process. *See Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).

Respondent does not contest that Petitioner's degenerative disc disease constitutes a spine disorder. The issue here is whether Petitioner's back impairments meet all of the criteria establishing nerve root compression. Petitioner contends the ALJ offered no analysis of the evidence and failed to discuss the relevant MRI findings establishing nerve root compression. Petitioner contends also that the ALJ applied the wrong criteria, because difficulty ambulating is not a requirement of Listing 1.04A. Respondent counters that the medical evidence does not conclusively establish all of the elements required to find nerve root compression.

Here, the ALJ provided a more detailed discussion to support his step three finding during his discussion of the medical evidence at step four. (AR 20 – 23.) The Court finds substantial evidence supports the ALJ's conclusion. The ALJ cited to Petitioner's MRI findings, dated May 22, 2015. (AR 20, 305 – 306.) The imaging established a "mild disc bulge with superimposed very small central caudal extrusion. Moderate right posterior

---

[5] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.00 (Musculoskeletal Disorders – Adult) (Effective: May 22, 2018 to September 23, 2019). The listing has been amended since the time of the ALJ's written determination issued on July 15, 2019.

**MEMORANDUM DECISION AND ORDER - 8**

lateral/foraminal cephalad extrusion likely contacting though not producing significant mass effect upon the right L5 nerve root. Very small broad-based left foraminal cephalad extrusion contacting though not producing significant mass effect upon the left L5 nerve root." (AR 20, 305.)

The ALJ appropriately characterized this evidence as lacking "significant" nerve root compression required to satisfy the criterion of Listing 1.04A. Further, the ALJ noted the absence of evidence stablishing motor loss or weakness, which Petitioner admitted during the hearing was not established. (AR 19, 37.) Petitioner conceded that the medical evidence of record did not confirm atrophy of the muscles, and showed Petitioner had intact muscle tone. (AR 37.) A review of Dr. Michael Spackman's consultative examination results from December 2, 2016, confirm that Petitioner exhibited 5/5 strength in both lower extremities, and that she did not display evidence of atrophy; had normal bulk/tone; and intact sensation to soft touch in her bilateral lower extremities. (AR 358.) A later consultative examination by Dr. Ralph Heckard on February 10, 2018, also revealed intact muscle tone, no atrophy of musculature, and 5/5 motor strength of both lower extremities. (AR 366.)

Accordingly, the Court finds substantial evidence supported the ALJ's finding at step three that Petitioner's impairments did not meet or equal the criteria of Listing 1.04A. *See Worth v. Astrue*, 330 Fed.Appx. 642, 644 (9th Cir. 2009) (affirming ALJ's determination that claimant did not satisfy Listing 1.04(A) because "[t]he medical record revealed that [claimant] suffered neither nerve root compression nor symptoms of

**MEMORANDUM DECISION AND ORDER - 9**

compression, such as sensory or reflex loss").[6] Petitioner is not entitled to remand on this issue.

### 3.    Use of a Walker

Petitioner contends the ALJ's RFC assessment is erroneous because there was no discussion or analysis by the vocational expert or in the ALJ's written decision concerning whether Petitioner's use of a walker would erode the sedentary occupational base. Respondent argues that the ALJ's determination that the walker was not prescribed supports the ALJ's resulting RFC determination that Petitioner did not require a walker to ambulate. The Court finds the ALJ erred, because he failed to discuss the medical evidence of record substantiating Petitioner's need for a walker. Accordingly, the Court finds the ALJ's RFC assessment is erroneous.

A claimant's RFC represents a finding of the range of tasks she can perform notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id*. To properly ascertain a claimant's RFC, an ALJ must therefore assess Petitioner's exertional capabilities, addressing her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a.

---

[6] The ALJ's reference to the requirement that Petitioner show ineffective ambulation is harmless error. Although there is no requirement in Listing 1.04A that Petitioner establish the inability to ambulate effectively, the ALJ adequately discussed the requirements.

**MEMORANDUM DECISION AND ORDER - 10**

A hypothetical question posed to a vocational expert in aid of determining a claimant's RFC must "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995). *See also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to a vocational expert must set out all the limitations and restrictions of the particular claimant[.]") (emphasis in original).[7]

At the hearing, Petitioner testified she uses a walker. (AR 49 – 50.) To grocery shop, Petitioner testified she uses an electric cart and that she cannot go without her walker because she is not strong enough to hold herself up while shopping. (AR 50 - 51.) The record reflects Petitioner purchased the walker herself in or about 2017, which she reported using daily for ambulation. (AR 363.)

In his written decision, the ALJ found that the medical evidence does not support Petitioner's allegations of impairment to the extent alleged. (AR 21.) The ALJ discussed the consultative examination findings by Dr. Michael Spackman from December of 2016, which revealed Petitioner was not using an assistive device and could walk on her heels and toes, rise and sit down, and get on and off the examination table with only "mild" problems. (AR 21.) Dr. Ralph Heckard's physical consultative examination on February 10, 2018, revealed Petitioner could walk short distances, maintain balance, and was able

---

[7] Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). These include mental limitations, like the effects of depression, fatigue, pain, tenderness, numbness and muscle spasms.

**MEMORANDUM DECISION AND ORDER - 11**

to sit, stand, and walk without use of the walker. (AR 21.) The ALJ noted also that Petitioner admitted the walker was not prescribed by any medical provider. (AR 21.)

In his hypothetical questioning of the vocational expert at the hearing, the ALJ did not ask the VE to consider Petitioner's use of a walker. (AR 57 – 63.) Based upon the RFC finding in the ALJ's written decision, it is clear the ALJ concluded Petitioner could perform the requisite standing and walking requirements of sedentary work, which requires the ability to stand or walk no more than about 2 hours of an 8-hour workday, and to sit for approximately 6 hours of an 8-hour workday. SSR 83-10. He did not include a requirement that Petitioner be permitted to use a walker.

Notably absent from the ALJ's analysis is a discussion of the two medical opinions indicating Petitioner's need for a walker. On October 12, 2018, Department of Disability Services medical consultant Nisha Singh, M.D., completed a physical residual functional capacity assessment upon informal remand. (AR 385 – 392; 371 - 373.) Dr. Singh specifically noted that Petitioner's standing and walking requirements should be limited to two hours, but "[s]he can use walker as needed for prolonged walking and uneven surfaces." (AR 386.) Dr. Heckard assessed that, without the walker, Petitioner displayed "slowing and unsteadiness with forward leading unsteadiness with short distance unassisted ambulation….There is mild symmetrical forward-leaning unsteadiness of station performance….Her current presenting condition would likely limit her capacity and tolerance for engaging in prolonged standing or balancing;

**MEMORANDUM DECISION AND ORDER - 12**

continuous uninterrupted ambulation; [and] frequent step or stair climbing or descending…." (AR 369.)

Both Dr. Singh and Dr. Heckard opined that Petitioner's use of a walker was medically necessary, yet the ALJ did not acknowledge this opinion evidence. The use of a "medically required hand-held assistive device" may "significantly erode" the occupational base for an individual who must us such a device. Social Security Ruling (SSR) 96-9p at *7. If a claimant has a genuine medical need for a walker, such a limitation should be included in any hypothetical questioning of the VE. Here, the RFC adopted by the ALJ did not include the use of a walker and the VE provided no testimony regarding whether the jobs he identified could be performed if Petitioner required one. The vocational effect of a walker restriction may vary as to each function an individual can perform. It may limit standing, walking, lifting, carrying, pushing or pulling. *Cano v. Colvin*, 2015 WL 10945616 at *4 (C.D. Cal. Jan. 26, 2015) (citing *Worley v. Colvin*, 2014 WL 103777 at *5 (D. Colo. Jan. 10, 2014)). Vocational experts have testified in other cases regarding whether a person needing a cane (or in this case, a walker) could work as a marker, production line assembler, or electronics worker. *Blanket v. Berryhill*, No. 2:16-CV-00001-LRS, 2017 WL 2234184, at *4 (E.D. Wash. May 22, 2017) (citing *Cano*, 2015 WL 10945616 at *4).

If a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not <u>ordinarily</u> be significantly eroded. SSR 96-9p at *7.

**MEMORANDUM DECISION AND ORDER - 13**

On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of neurological impairment) may be significantly eroded. SSR 96-9p at *7.

Here, the medical opinion evidence offered by Dr. Singh indicates that Petitioner would require a walker as needed only for prolonged walking and uneven surfaces, which suggests that the occupational base would not necessarily be significantly eroded. However, Dr. Heckard's opinion suggests Petitioner may be more limited, as he noted slowing and unsteadiness with forward leading unsteadiness even for short distance ambulation, and forward-leaning unsteadiness of station performance, suggestive of balance issues without a walker. The ALJ failed to discuss this evidence, or otherwise inquire of the VE whether the use of a walker, either for prolonged walking or on uneven surfaces, or as needed for balance, would affect the performance of either Petitioner's past relevant work or the jobs identified by the VE at step five.

Finally, the Court rejects Respondent's argument that the lack of a prescription for an assistive device is dispositive. First, there is persuasive authority that a prescription or lack thereof is not dispositive of the question of medical necessity. *Wright v. Colvin*, 2014 WL 5591058, at *4 (S.D. Ga. Nov. 3, 2014) (citing *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir.2009) (holding that medical documentation establishing the need for a device does not require a prescription); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (holding that a prescription for a cane without more was insufficient for a finding that the cane was medically necessary)). Second, SSR 96-9p refers only to the necessity

**MEMORANDUM DECISION AND ORDER - 14**

of "medical documentation" to establish the need for a hand-held assistive device and says nothing about the necessity of a prescription. *Blanket v. Berryhill*, No. 2:16-CV-00001-LRS, 2017 WL 2234184, at *4 (E.D. Wash. May 22, 2017). Dr. Singh expressly stated in her written opinion that Petitioner's use of a walker is medically necessary.

The ALJ did not make any specific finding as to Petitioner's need for a walker or the impact of its use upon Petitioner's ability to perform sedentary work as required by SSR 96-9p, despite two medical opinions documenting Petitioner's need for a walker. Accordingly, the Court finds it was error for the ALJ to fail to inquire of the VE, or to include a discussion of Petitioner's use of or need for a walker, in his determination of Petitioner's RFC.

**4.     Subjective Symptom Testimony**

The ALJ considered Petitioner's subjective symptom testimony concerning her physical impairments, finding her testimony did not substantiate her subjective allegations of disabling limitations. The ALJ concluded that, although Petitioner's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the evidence in the record. (AR 20.) The ALJ cited the following reasons for discrediting Petitioner's account of the severity of her pain: (1) lack of medical treatment; (2) daily activities inconsistent with her allegations of pain and impaired concentration; and (3) lack of any medical diagnosis for mental impairments.

Petitioner argues the ALJ's conclusion is not supported by substantial evidence in the record and is therefore erroneous. She challenges the ALJ's rejection of her subjective symptom testimony due to lack of medical treatment, contending that the reason is not supported, and the ALJ engaged in speculation concerning the availability of free or low-cost care. Petitioner also contends the ALJ mischaracterized her daily activities and failed to acknowledge that pain may impact her ability to sustain concentration and focus. Respondent counters that the ALJ provided valid reasons for finding Petitioner's impairments were not as limiting as alleged. The Court finds the ALJ's stated reasons are not supported by substantial evidence, as explained below.

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her

**MEMORANDUM DECISION AND ORDER - 16**

symptoms only by offering specific, clear and convincing reasons[8] for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[9] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical

---

[8] Respondent contends the clear and convincing standard is inconsistent with the substantial evidence standard of review prescribed by Congress. Resp. Brief at 4. (Dkt. 18.) This argument has been repeatedly raised before the Court. Recently, the United States Court of Appeals for the Ninth Circuit explained in *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Id*. at 1277 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). This allows the Court to meaningfully review the ALJ's decision. *Id*. In turn, the reasons for rejecting a claimant's testimony about her symptoms must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). In other words, the Court should be able to review the portions of the record cited in support of the ALJ's reasons, and determine whether the evidence is sufficient to support them. Accordingly, the Court finds no inconsistency.

[9] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

**MEMORANDUM DECISION AND ORDER - 17**

sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

### A.    Petitioner's Limited Medical Treatment.

In evaluating Petitioner's symptom testimony, the ALJ acknowledged Petitioner's financial limitations, but chastised her for failing to seek out low-cost or sliding fee scale treatment options. (AR 22.) The ALJ apparently found Petitioner's failure to seek out low or no cost treatment options inexcusable, because she "has the mental capacity to research alternative options for treatment" considering she was a legal secretary for 20 years. (AR 22.) Petitioner testified, however, that once her employment was terminated, she had no medical insurance and could not afford treatment. (AR 44.) She testified she

was unaware that there may have been low or no cost options for treatment of her back condition. (AR 44.)

An ALJ may appropriately consider treatment history, or lack thereof, in evaluating a petitioner's symptom statements. SSR 16-3p at 6-7 (The Commissioner recommends assessing records of medications, treatments and methods used to alleviate symptoms as well as medical source opinions and reports regarding claimant's treatment and responses to treatment.). "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638. However, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Id*. (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)).

The regulations require an ALJ to consider plausible reasons a claimant may provide for not complying with treatment or seeking treatment consistent with the degree of her complaints. *See* SSR 16-3p. Inability to afford treatment or access low-cost medical services can be a legitimate reason for not seeking medical treatment. *See* SSR 16-3p; *Trevizo*, 871 F.3d at 681 (9th Cir. 2017); *see also Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's

**MEMORANDUM DECISION AND ORDER - 19**

complaint for lack of treatment when the record establishes that the claimant could not afford it").

The Court finds the ALJ erred in his consideration of Petitioner's limited treatment history when assessing her symptoms. *Axtman v. Saul*, No. 2:19-CV-00194-CWD, 2020 WL 5801500, at \*8 (D. Idaho Sept. 29, 2020). Consistent with the Court's holding in *Axtman,* the ALJ's speculation regarding whether Petitioner sought or was eligible for free or low-cost health care has no basis in the record. *Id.* (finding error when the ALJ reasoned the petitioner's failure to seek out low-cost health insurance undercut his testimony about the severity of his symptoms). Despite Petitioner's testimony that she could not afford treatment and lost her health insurance coverage upon her termination from employment, the ALJ erroneously concluded Petitioner's failure to seek low-cost treatment options was inconsistent with the alleged severity of her impairments. *Id.*

### B.    Petitioner's Daily Activities

The Court finds the ALJ relied upon an inaccurate account of Petitioner's testimony and prior written statements concerning her daily activities. The ALJ concluded Petitioner's testimony at the hearing that she does no household chores was inconsistent with her reported activities in December 2016 that she could cook, do simple housework, and attend to her personal care, and with a later function report in 2018 that indicated she cooked and could attend to her personal needs. He also found her testimony inconsistent with her reported ability to sit and spend time reading, watching television, and folding laundry. (AR 22.)

**MEMORANDUM DECISION AND ORDER - 20**

The ALJ cites to the narrative description in Dr. Spackman's consultative examination notes for Petitioner's reported level of functioning in 2016. (AR 22, 357.) There, Dr. Spackman records that Petitioner "can do personal cares [sic] although leaning over to do her socks/shoes is hard, can make meals, does simple housework but bending is difficult, she only goes shopping if there is a cart." (AR 357.) Even assuming this is an accurate account of Petitioner's activities, there is no indication in this brief recitation that Petitioner does these activities daily, nor does it appear that the activities are strenuous. Further, it is clear from the 2018 function report, which the ALJ did not convey in an accurate manner, that even these limited activities became much more difficult, and further limited for Petitioner to perform, over time.

Petitioner's January 14, 2018 function report indicates she is using a walker, and spends much of her day sitting in a recliner. (AR 232 – 233.) Cooking consists of sitting on her walker[10] and fixing a sandwich or microwaving leftovers for lunch. (AR 233, 234.) She reportedly is unable to care for her dogs. (AR 233.) She also reports being unable to take a shower without using a shower chair or having her daughter sit in the next room to assist her when getting in and out of the shower, and she cannot fix her hair, shave, or use the toilet without assistance. (AR 233.) She folds laundry provided it is brought to her and she can do it while in her recliner. (AR 234.) She states she does not do chores. (AR 235.) Petitioner reportedly relies upon her daughter for transportation, which is limited to weekly trips to visit her mother and to grocery shop once each month.

---

[10] Petitioner indicated that the walker she uses has a seat.

**MEMORANDUM DECISION AND ORDER - 21**

(AR 236.) Petitioner stated she uses a motorized cart to shop for groceries. (AR 236.) Petitioner indicated also that she could lift approximately 15 to 20 pounds.

Petitioner's testimony at the hearing is consistent with the statements on her 2018 function report. Petitioner testified that her back pain is worse than it was three years ago and was not improving, thereby accounting for any discrepancy between what was recorded in 2016 and her activity level in 2018 and later. (AR 56.) She testified that she spends 90% of her time in a recliner, including to sleep. (AR 48 – 49.) While she testified that she does drive, she does not drive alone because she requires assistance with her walker. (AR 50.) She testified she does no chores at home. (AR 51.) She testified she could, while seated, lift two gallons of milk (one in each hand) weighing eight pounds each, consistent with her statement on the 2018 function report. (AR 22, 54, 237.) Finally, Petitioner testified that she was unable to complete an eight-hour workday or a forty-hour work week without back pain impairing her ability to concentrate, stand, or sit, and that her employment was ultimately terminated because of missed work due to her back pain. (AR 46 – 47, 52 – 54, 56.)

The "mere fact" that a claimant has carried on certain daily activities does not detract from Petitioner's sincerity as to her overall disability. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). As in *Orn*, neither of the two grounds for using daily activities to form the basis of an adverse credibility determination are present here. First, as she described them, Petitioner's activities do not contradict her other testimony. *See Fair*, 885 F.2d at 603.

**MEMORANDUM DECISION AND ORDER - 22**

Even assuming Petitioner was more functional in 2016 as recorded by Dr. Spackman, she testified her condition had worsened over time, and the statements from the 2018 function report are consistent with her testimony at the hearing.

Second, Petitioner's activities do not meet the threshold for transferable work skills, the second ground an ALJ may rely upon for using daily activities to discredit subjective symptom testimony. *Id*. Petitioner's activities consist of sitting in a recliner watching television, reading, and folding clothes, punctuated by time spent in the kitchen making a sandwich while seated on a walker, and Petitioner stated she no longer could attend to her personal care without assistance. These activities are "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." *Orn*, 495 F.3d at 639 (citing *Fair*, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")). Even if the ALJ's conclusion is taken at face value that Petitioner may be more capable than she describes because she does some simple chores, attends to her personal care, and cooks simple meals, there is no analysis as to how these limited activities transfer to the workplace. *Orn*, 495 F.3d at 639.

Accordingly, the Court finds the ALJ's conclusion that Petitioner's statements about the limiting effects of her pain are undermined by her daily activities is not supported by substantial evidence in the record as a whole.

**MEMORANDUM DECISION AND ORDER - 23**

**C.      Petitioner's Limited Concentration and Focus**

The ALJ concluded the evidence did not support Petitioner's allegations of impaired concentration and focus for two reasons. First, he cited the lack of an associated diagnosis from an acceptable medical source to account for such a limitation. Second, he found Petitioner's activities, which included driving, shopping and reading, inconsistent with her claim. (AR 22.)

The lack of corroborating objective medical evidence is one factor the ALJ may consider in "determining the severity of the claimant's pain" or other symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). An ALJ may reject subjective symptom testimony if it is "not substantiated affirmatively by objective medical evidence," *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

Here, Petitioner claims pain, not mental impairments, are the cause of her impaired concentration. Petitioner need only produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. *Trevizo*, 871 F.3d at 678. Pain is recognized as producing a psychological response that in turn produces a functional impairment. *See, e.g., Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995), as amended (Apr. 9, 1996) (recognizing mental limitations arising from acute pain); *see also Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir.1991) (en banc) (recognizing that pain is "a completely subjective phenomenon" and that the Secretary must consider all available evidence in assessing complaints of pain). The Court therefore finds the ALJ erred, because the reason he cited is not legally sufficient in

**MEMORANDUM DECISION AND ORDER - 24**

this case. The ALJ cannot rely upon the lack of a medical diagnosis for any mental impairments to discredit Petitioner's testimony that her back pain causes impaired concentration.

Turning to the ALJ's second reason for discrediting Petitioner's testimony about how her pain impairs her focus and concentration, the Court finds it is not supported by substantial evidence in the record. Petitioner testified that she would be unable to sustain concentration over the course of an eight-hour workday due to pain, and that her focus would wane because of pain. (AR 52 - 53.) This testimony is not inconsistent with Petitioner's statements that someone else accompanied her while driving, and her only outings by car are weekly to visit her mom and grocery shopping once a month. (AR 235 – 236.) In other words, these outings are not daily, and Petitioner requires assistance to do them.

Petitioner testified that she reads and watches television daily, but there is no evidence in the record concerning how long she does either activity. (AR 236.) Further, she reads and watches television while reclining, and she stated she must reposition herself frequently due to pain. (AR 231, 236.) The ALJ did not explain how these two activities, which Petitioner does while in a recliner to alleviate her back pain, are inconsistent with her testimony that she could not sustain concentration and focus in an office setting that requires standing, walking, or sitting in an upright chair. Third party statements from Petitioner's family members, which the ALJ did not discuss, confirm

**MEMORANDUM DECISION AND ORDER - 25**

that Petitioner spends most of her time in a recliner and verify the frequency of her outings to visit her mother or to grocery shop. (AR 23, 276 – 283.)

## CONCLUSION

Based upon the above analyses, the Court finds remand is appropriate for the ALJ to reconsider the evidence at steps four and five. The ALJ's reasons for finding that Petitioner's subjective symptom testimony undermined her allegations of pain and inability to concentrate are legally insufficient and not supported by substantial evidence. Further, the ALJ's failure to discuss the impact of a walker, if any, upon the ability to perform either Petitioner's past relevant work or other jobs is not in accordance with SSR 96-9p. Accordingly, the decision of the Commissioner will be remanded for further consideration.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      The Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: December 14, 2021

Candy W. Dale
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 26**